UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARNELL C. BOYD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:13CV257 CDP |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

# **MEMORANDUM AND ORDER**

Missouri state prisoner Darnell C. Boyd is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri, serving sentences for his conviction of robbery first degree and attempted robbery first degree. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that his conviction was obtained in violation of his constitutional rights. Because none of Boyd's claims merit granting habeas relief, I will deny his petition for writ of habeas corpus.

## *Procedural History*

On July 9, 2008, a jury in the Circuit Court of St. Louis City, Missouri, found Boyd guilty of one count of robbery first degree, one count of attempted robbery first degree, and two counts of armed criminal action. Boyd was sentenced as a persistent offender to concurrent terms of twenty years'

imprisonment for the robbery conviction, fifteen years' imprisonment for the attempted robbery conviction, and five years' imprisonment for each armed criminal action conviction.[1] On direct appeal, the Missouri Court of Appeals affirmed Boyd's conviction and sentence. *State v. Boyd*, 305 S.W.3d 495 (Mo. Ct. App. 2010). Boyd thereafter filed a motion for post-conviction relief pursuant Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. (Resp. Exh. F.) On November 13, 2012, the Missouri Court of Appeals affirmed the trial court's denial of Boyd's Rule 29.15 motion. *Boyd v. State*, 383 S.W.3d 479 (Mo. Ct. App. 2012).

### *Factual Background*

On direct appeal, the Missouri Court of Appeals summarized the evidence adduced at trial as follows:

> In the evening of February 27, 2007, Antonio Cox and his girlfriend, Carlatta Busey, were walking down a street toward Busey's house. A car occupied by two men passed by Cox and Busey and stopped down the street. The driver and passenger got out of the car and eventually approached Cox and Busey. The driver had a gun in his hand and told Cox, "Get your ass in the alley before I kill you." The passenger put a gun in Cox's back and went through Cox's pockets. The passenger took Cox's coat, cell phone and $150. The driver pointed a gun at Busey and "felt" Busey's pocket but did not find anything. The driver and passenger then went to the car and drove away.
>
> The day after the robbery two detectives were in an unmarked

---

[1] Boyd has completed service of the two five-year terms of imprisonment.

vehicle and saw a vehicle that matched the description of the car involved in the robbery. When the detectives approached the car, it "sped off" and the detectives lost sight of the car. The detectives put out a broadcast that described the car and the license plate number. Several minutes later, another police officer saw the car parked on a street. As the officer and his partner began a surveillance, they saw a man who fit the description of one of the robbers walk by the car and enter a nearby house. The man was later identified as defendant's nephew and he told police that defendant was his "guardian." One of the officers knew that defendant matched the description of one of the robbers. A detective subsequently compiled a photo-array with defendant's picture. Cox and Busey identified defendant from the photo-array and at trial as one of the men who robbed them.

(Resp. Exh. E, Memo. at 2.)[2]

### *Grounds for Relief*

Boyd filed the instant petition for writ of habeas corpus on February 11, 2013, in which he raises three grounds for relief:

1) That he was denied due process when the prosecutor engaged in improper personalization during closing argument;

2) That he was denied the effective assistance of trial counsel when counsel failed to call a witness to testify on his behalf at trial; and

3) That he was denied the effective assistance of trial counsel when counsel failed to call him to testify on his own behalf at trial.

Boyd raised these claims in State court, and the Missouri Court of Appeals denied them on their merits.

### *Legal Standard*

---

[2] Because Boyd does not rebut these factual findings with clear and convincing evidence, I presume them to be correct. 28 U.S.C. § 2254(e)(1).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Williams v. Taylor*, 529 U.S. 362, 379 (2000). A State court's decision is "contrary to" clearly established Federal law when it is opposite to the Supreme Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). A State court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established Federal law does not suffice to support a grant of habeas relief. Instead, the State court's application of such law must be objectively unreasonable. *Id.* at 409-11; *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a State court decision involves an "unreasonable determination

of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not *ipso facto* ensure the grant of habeas relief. Instead, the determination of such facts must be unreasonable in light of the evidence of record. *Collier*, 485 F.3d at 423; *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). As such, to obtain federal habeas relief, Boyd must show that the challenged State court ruling "rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011)). This standard is difficult to meet. *Id.* at 1786.

### *Discussion*

A.  *Ground 1 – Prosecutorial Misconduct*

In his first ground for relief, Boyd claims that he was denied due process of law when the trial court permitted the prosecutor to engage in improper

- 5 -

personalization during her closing argument by suggesting to the jury that an acquittal would affect all city residents' ability to be free from harm and walk freely in the city. Boyd raised this claim on direct appeal. Upon review of the merits of the claim, the Missouri Court of Appeals denied relief. (Resp. Exh. E.)

In determining whether the prosecutor's closing argument violated Boyd's constitutional rights, the pertinent inquiry is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). "There must be a reasonable probability that the error affected the jury's verdict and that without the error, the jury's verdict would have been different." *Rousan v. Roper*, 436 F.3d 951, 960 (8th Cir. 2006) (internal quotation marks and citation omitted). I may grant Boyd habeas relief on this claim only if "the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999). With "the strict due process standard of constitutional review, the deferential review mandated by the AEDPA, and [this Court's] less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial," my review of whether the prosecutor's closing argument violated Boyd's right to due process is "exceptionally limited." *Id.; see also Sublett v. Dormire*,

217 F.3d 598, 600 (8th Cir. 2000).

In the instant ground for relief, Boyd challenges that portion of the prosecutor's closing argument wherein she stated, "But this crime of robbery does not just affect two people. This crime affects every person who lives on that block. Every person in the city who wants to walk free from harm." (Resp. Exh. E, Memo. at 3.) The trial court overruled defense counsel's objection to the improper personalization of this argument, whereupon the prosecutor continued, "People in the city have that freedom and should be able to do that." (*Id.*) Boyd argues that this argument improperly told the jury that an acquittal would affect their safety and the safety of their family and friends. He further contends that, given that the evidence of guilt was not overwhelming, this improper argument had a decisive effect on the verdict.

Improper personalization occurs when the prosecutor asks the jurors during closing argument to place themselves in the place of a party or victim, or suggests personal danger to the jurors or their families if the defendant were to be acquitted. *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000); *West v. State*, 244 S.W.3d 198, 201 (Mo. Ct. App. 2008). A prosecutor's comments on the prevalence of crime in the community or on evils that may befall society if the jury fails its duty do not constitute improper personalization. *State v. Burton*, 219 S.W.3d 778, 781 (Mo. Ct. App. 2007). Likewise, a prosecutor's argument that the public's protection

rests with the jury is not improper personalization. *Id.* As noted by the Missouri Court of Appeals here, the part of the argument challenged by Boyd was permissible commentary on the negative effects of crime on persons in the city rather than alluding to personal danger that would befall the individual jurors, their families, or their friends if they were to acquit Boyd. (Resp. Exh. E, Memo. at 4.) As such, no improper personalization occurred. Although Boyd argues that the jurors, their families, and their friends are "persons in the city" and thus were included the prosecutor's suggested group of people subject to potential harm, a more direct reference to danger befalling a juror or another identifiable person is required for improper personalization. *Hall,* 16 S.W.3d at 585-86. Referring to danger posed to society in general is too indirect to give rise to improper personalization. *Id.*

Even if the challenged comments were improper, they were not so outrageous to render Boyd's trial fundamentally unfair. They did not mischaracterize the evidence or implicate any other of his specific rights. Further, when coupled with the trial court's instruction to the jury that closing arguments are not evidence (*see* Resp. Exh. B at 35) and the jury's "common sense ability to put aside a particular type of overzealous advocacy," *James*, 187 F.3d at 870, it cannot be said that these statements so infected the trial with unfairness that a reasonable probability exists that the verdict might have been different had the

alleged error not occurred. *See also Sublett*, 217 F.3d at 601. Accordingly, under *Darden*, the Missouri Court of Appeals' decision was not contrary to nor an unreasonable application of clearly established federal law.

The claim raised in Ground 1 of the instant petition will therefore be denied.

B.     *Grounds 2 and 3 – Ineffective Assistance of Trial Counsel*

In his second ground for relief, Boyd contends that trial counsel was ineffective for failing to subpoena and call Shawn Johnson, his barber, to testify at trial. In his third ground, Boyd contends that trial counsel was ineffective for failing to allow him to testify at trial on his own behalf. Boyd raised these claims in his Rule 29.15 motion and on appeal of the denial of the motion. Upon consideration of the merits of the claims, the Missouri Court of Appeals denied Boyd relief. (Resp. Exh. J.)

At the time Boyd's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, Boyd must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Boyd bears a heavy burden in overcoming "a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, a strong presumption exists that counsel's conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). Decisions relating to trial strategy are "virtually unchallengeable." *Id.* at 690. To establish prejudice, Boyd "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because I review Boyd's claims of ineffective assistance of counsel in the habeas context, I must be careful not to apply the *Strickland* analysis as if the claims were being addressed in the first instance. In order to succeed on these habeas claims under § 2254(d)(1), therefore, it is not enough for Boyd to convince me that, in my independent judgment, the State court applied *Strickland* incorrectly. "'Rather, he must show that the [Missouri] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.'" *Hoon v. Iowa*, 313 F.3d 1058, 1063 (8th Cir. 2002) (quoting *Bell v. Cone*, 535 U.S. 685, 698-99 (2002)) (internal citation omitted in *Hoon*). For the following reasons, Boyd has failed to do so here.

Boyd's convictions were based largely on the eyewitness and identification testimony of the victims. Specifically, the victims testified that they were robbed

by two males wearing hooded sweatshirts and that the robber in the gray sweatshirt had a goatee – described by one of the victims as "longer chin hair" – and dreads, braids, or cornrows. In support of Boyd's defense of misidentification, trial counsel called Boyd's sister, Angela Young, who testified to photographs taken of Boyd in December 2006 – two months before the robbery – which depicted Boyd as having a "low haircut" and a beard. Young testified that Boyd's appearance on February 27, 2007 – the day of the robbery – was similar to his appearance in the photographs. Young also testified that Boyd did not have braids or a long goatee in February 2007. During cross examination, Young testified that she had previously been convicted of stealing and misdemeanor assault.

    1.    <u>Failure to Call Shawn Johnson</u>

During his investigation, counsel interviewed Boyd's barber, Shawn Johnson, who told counsel that Boyd did not have dreadlocks or a long goatee in February 2007. Counsel endorsed Johnson as a witness but did not subpoena him to testify at trial. Within days of trial, Johnson told counsel that he was in Texas for training and was unsure whether he could return for trial. Counsel did not seek a continuance. At some point during the trial after the defense rested, counsel was told that Johnson was available to testify. Counsel determined not to reopen his case because evidence of Boyd's physical appearance had already been adduced through the December 2006 photos and Ms. Young's testimony.

In relation to Boyd's motion for post-conviction relief, Johnson provided deposition testimony that he was Boyd's barber from 2006 to 2008 and that the last time he saw Boyd before February 2007 was in November or December 2006. Johnson testified that when he saw Boyd in November-December 2006, Boyd had a short, "Caeser cut" hairstyle and did not have dreadlocks, cornrows, long chin hair, or a goatee. Johnson was willing to testify on behalf of Boyd, but when he arrived at the courthouse to testify, he was told that it was too late.

The Missouri Court of Appeals determined that counsel's failure to secure or call Mr. Johnson to testify at trial did not rise to the level of ineffective assistance inasmuch as Johnson's testimony would have been cumulative to other evidence adduced at trial, and specifically, to Ms. Young's testimony and the December 2006 photographs, which were taken in the same time frame as when Johnson last saw Boyd before the robbery. (Resp. Exh. J at 6.) Because the failure to present cumulative evidence does not result in prejudice sufficient to give rise to a claim of ineffective assistance of counsel, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006), the court of appeals' decision that counsel was not ineffective for failing to present cumulative evidence was reasonable and did not run afoul of established Supreme Court precedent.

In his Traverse, however, Boyd argues that Johnson's testimony could not be considered merely "cumulative" given that Ms. Young's credibility and objectivity

were sufficiently placed in doubt because of evidence that she was Boyd's sister and had criminal convictions. Boyd argues that, unlike Young, Johnson was a disinterested witness and his testimony regarding Boyd's physical appearance would have refuted the State's identification evidence – despite Young's perceived bias – thereby strengthening Boyd's defense of mistaken identity. For the following reasons, Boyd's argument fails.

Counsel may render ineffective assistance where he fails to make reasonable efforts to procure testimony that he knows to be significant to the defense. *See Tosh v. Lockhart*, 879 F.2d 412, 414 (8th Cir. 1989). This is true in circumstances where, as here, consistent testimony is elicited from another witness but that witness's objectivity has sufficiently been placed in doubt. *Id.* at 414-15 (lone alibi witness's potential bias at issue because of her romantic relationship with defendant; four disinterested alibi witnesses with corroborating testimony not called or secured by counsel). In Boyd's case, however, Young's testimony was not the only evidence adduced by the defense regarding Boyd's physical appearance – the jury also had before it photographs of Boyd taken in December 2006, which was the time Johnson says he last saw Boyd prior to the robberies. Inasmuch as Johnson's testimony as to how Boyd appeared in December 2006 was cumulative to photographic evidence of Boyd's appearance in December 2006 – the objectivity of which was not questioned – it cannot be said that counsel was

ineffective for failing to call Johnson to provide cumulative testimony at trial, regardless of his availability.

Based on the above, the Missouri Court of Appeals' decision denying Boyd relief is well based on law and fact. I am unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Boyd demonstrated such. Therefore, it cannot be said that the State court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Boyd shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Accordingly, the claim raised in Ground 2 of the instant petition is denied.

2. <u>Failure to Permit Boyd to Testify</u>

Boyd did not testify at trial. On his claim that counsel was ineffective for unilaterally deciding not to call him to testify on his own behalf, the Missouri Court of Appeals summarized the evidence adduced at the post-conviction motion hearing as follows:

> [T]rial counsel testified that he explained to movant his right to testify and that the decision to testify ultimately belonged to him. He told him that Ms. Young could testify to his alibi and to his appearance on the date of the robbery, and that if movant elected to testify, the state

> would introduce into evidence his prior convictions for drug possession and carrying a concealed weapon. He never told movant he could not testify. During movant's case, movant never said anything to trial counsel about wanting to take the stand. Movant testified that he discussed taking the stand with trial counsel, that trial counsel said he did not think it would be a good idea, but that he was "under the impression" that he was going to testify at trial because it would be "vital" to his defense. Movant also admitted that trial counsel told him that the decision to testify ultimately belongs to him. He did not tell trial counsel that he wanted to testify because "[h]e already knew I wanted to testify."

(Resp. Exh. J at 7.)[3]

A criminal defendant has a constitutional right to testify, and only the defendant may waive that right. *See Rock v. Arkansas,* 483 U.S. 44 (1987); *Frey v. Schuetzle*, 151 F.3d 893, 897-98 (8th Cir. 1998). A defendant's waiver of his right to testify, like his waiver of other fundamental constitutional rights, must be made voluntarily and knowingly. *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir. 1987) (citing *Boykin v. Alabama,* 395 U.S. 238, 242-43 (1969); *Johnson v. Zerbst,* 304 U.S. 458, 464-65 (1938)). "[A] knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify." *Frey v. Schuetzle,* 151 F.3d 893, 898 (8th Cir. 1998). "[U]nder such circumstances the defendant must act 'affirmatively' rather than apparently 'acquiesc[ing] in his counsel's advice that he not testify, and then later claiming that his will to testify was overcome.'" *Id.* (quoting *United States v. Bernloehr*,

---

[3] Because Boyd does not rebut these factual findings with clear and convincing evidence, I presume them to be correct. 28 U.S.C. § 2254(e)(1).

833 F.2d 749, 751-52 (8th Cir. 1987)).

Here, counsel advised Boyd that it was Boyd's decision as to whether he testified; but that if he did so, evidence of his prior convictions would be introduced and could be considered by the jury on matters relating to his credibility. For this reason, and others, counsel advised Boyd not to testify. (Resp. Exh. G at 9-11.) Counsel may advise a defendant not to testify as a matter of reasonable trial strategy. *Whitfield v. Bowersox*, 324 F.3d at 1009, 1016-17 (8th Cir.), *vacated in part on other grounds*, 343 F.3d 950 (8th Cir. 2003). After calling two witnesses at trial, the defense rested without calling Boyd to testify. Boyd remained silent and did not affirmatively state to either the court or to counsel that he wanted to testify. Given his silence in these circumstances, Boyd cannot now argue that he did not effectively waive his right to testify. *See Frey,* 151 F.3d at 898; *Bernloehr*, 833 F.2d at 751-52.

Boyd does not assert that counsel overbore his will to testify, and the record supports that the issue never arose. Nor does Boyd demonstrate that his testimony, if adduced, would have made a difference to the jury. Indeed, as counsel testified at the post-conviction hearing, Boyd's proffered testimony was similar to or the same as other evidence adduced by the defense at trial. (Resp. Exh. G at 9-10.) Accordingly, Boyd has not shown that his trial counsel's performance was deficient or that he suffered any prejudice on account of counsel's assistance

regarding his right to testify.

The Missouri Court of Appeals deferred to the post-conviction motion court's finding that counsel did not prohibit Boyd from testifying and that Boyd failed to demonstrate any reasonable probability that the outcome of the trial would have been different had he testified. The court of appeals further found that counsel's advice to Boyd that he not testify was a matter of sound trial strategy. Because the decision of the Missouri Court of Appeals was supported by the factual record and was not contrary to, or an unreasonable application of, clearly established federal law, Boyd is not entitled to habeas relief on this ground.

Accordingly, the claim raised in Ground 3 of the instant petition is denied.

## *Certificate of Appealability*

A district court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve additional proceedings. *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997). No reasonable jurist could differ on any of Boyd's claims. Therefore, I will not issue a certificate of appealability on any of the claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Darnell C. Boyd for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue in this case inasmuch as petitioner has failed to make a substantial showing that he has been denied a constitutional right.

A separate Judgment is entered this same date in accordance with this Memorandum and Order

                                          CATHERINE D. PERRY
                                          UNITED STATES DISTRICT JUDGE

Dated this 8th day of March, 2016.